## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement") is entered into between Guy D. Gifford, an individual ("Gifford"), and HSBC Bank USA, N.A. ("HSBC" and with "Gifford" together, the "Parties"). The Parties desire to settle fully, finally, and completely all differences between them, including the issues, allegations, and claims raised in the action now pending in the United States District Court for the Southern District of Florida entitled Guy D. Gifford v. HSBC Securities (USA) Inc., Civil Action No. 13 CV 22602 (UU) (the "Civil Action"). The Parties represent that they have discussed all aspects of their claims and this Agreement with their respective attorneys, have been fully advised by them as to their rights, understand that they are waiving legal rights by signing this Agreement, and enter into this Agreement voluntarily, with a full understanding of and agreement with all of its terms.

1. **Withdrawal of Civil Action**. As consideration for this Agreement, Gifford agrees to withdraw and dismiss the Civil Action with prejudice as to Gifford, without costs and attorneys' fees to any Party. Gifford authorizes his attorney, Anthony M. Georges-Pierre, Esq. of Remer & Georges-Pierre, PLLC ("Gifford's Counsel"), to sign and file the attached Stipulation of Dismissal With Prejudice and a to work cooperatively with counsel for HSBC to file a joint motion for approval of the settlement. Gifford further authorizes Gifford's Counsel to work in good faith with counsel for HSBC on a motion to the Court in which the Parties explain to the Court (including in person, should the Court or counsel for either Party believe appropriate) that the settlement is fair and equitable and that the Court should approve it by so-ordering the proposed Order attached hereto as Exhibit A. Gifford agrees that he and his counsel will take all reasonable steps to secure Court review and approval of this Agreement and settlement *in camera*, to the extent permitted by the Court. If the Court does not consent to the proposed Order, Gifford authorizes Gifford's Counsel to do whatever else is reasonable and necessary to secure Court order of the settlement and to effectuate the dismissal of the Civil Action with prejudice.

2. **Release of Claims**. In exchange for the promises contained in this Agreement, Gifford hereby waives, releases and forever discharges, and agrees to the fullest extent permitted by law that he will not in any manner institute, prosecute, or pursue, any and all complaints, claims, charges, demands, suits, actions, or causes of action, whether in law or in equity, which he asserts or could assert, at common law or under any statute, rule, regulation, order, or law, whether federal, state, or local, or on any grounds whatsoever, including without limitation, any claims under 42 U.S.C. § 1981, the Florida Civil Rights Act, any other federal, state or local laws prohibiting discrimination, the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, and any other federal, state or local laws relating to employment, wages and hours, and/or employee benefits; and any other federal, state, or local laws mandating leaves of absence, restricting an employer's right to terminate employees or otherwise regulating employment, requiring an employer to deal with employees fairly or in good faith, or providing recourse for alleged wrongful discharge, fraud, negligent misrepresentation, defamation, other torts, and similar or related claims, which Gifford may have against HSBC and any of its current or former predecessors, successors, parents, subsidiaries, affiliates, or related companies (including HSBC Securities (USA) Inc.) and/or any of their current or former owners, officials, directors, officers, shareholders, members, agents, representatives, servants, employees,



Initials

divisions, units, successors, predecessors, assigns, and benefit plans, heirs, executors, administrators, or attorneys (collectively, the "Released Parties") with respect to any event, matter, claim, damage or injury arising out of or as a result of Gifford's employment with any Released Party.

3. **Payment and Benefits**.

A. In consideration of the promises of Gifford as set forth herein, and without any other obligation to do so, after HSBC has received an original Agreement signed by Gifford, the executed Stipulation signed by Gifford's Counsel, and after the Court has entered an order approving the settlement and discontinuing with prejudice the Civil Action the following payments will be made to Gifford be delivering checks listed below to Gifford's Counsel:

(i) Within ten (10) business days after the Court approves this settlement and "so orders" the dismissal of the Civil Action, a check made payable to "Guy D. Gifford" in the amount of $4,035.00, less applicable withholdings for federal, state and local taxes and other applicable deductions, which represents purported back pay.

(ii) Within ten (10) business days after the Court approves this settlement and "so orders" the dismissal of the Civil Action, a check made payable to "Remer & Georges-Pierre, PLLC" in the amount of $8,465.00 for attorneys' fees and costs.

B. HSBC will issue an IRS Form W-2 to Gifford in connection with the payments set forth in Sections 4(A)(i). HSBC will issue an IRS Form 1099 to Gifford and Remer & Georges-Pierre, PLLC in connection with the payment set forth in Section 4(A)(ii). Gifford acknowledges and agrees that these payments are in full and final settlement of all disputes, claims, causes of action, or complaints between him and HSBC and any of the Released Parties defined above, and that Gifford is not entitled to any additional compensation or benefits from HSBC or any Released Party of any sort whatsoever. Gifford agrees that he is solely and exclusively responsible for any and all taxes attributable to the payments referred to in this Section 4 that are taxable as income to him, and he further agrees to indemnify HSBC and hold HSBC harmless from any tax liabilities, fines, penalties claims, judgments, damages, costs, expenses, or other liabilities (including reasonable attorneys' fees) attributable to his failure to pay taxes in connection with such payments.

C. Gifford acknowledges that the Released Parties have paid Gifford all payments or benefits (including but not limited to wages, bonus, commissions, severance, expense reimbursement, sick or vacation pay) presently due him, and that he is not entitled to any additional payments or benefits, other than that set forth in this Agreement.

D. In further consideration of Gifford's signing this Agreement, HSBC agrees to amend Gifford's Form U5 by filing an amended "Termination DRP" containing the following two changes to the "Allegation(s)" in No. 4: (1) changing "small" to "$0.99 (99 cents)" and (2) adding a sentence at the end that states, "Not securities related and no customer harm." HSBC also agrees to provide a neutral reference letter to Gifford that confirms his dates of employment, last position held, and final base salary.

Initials 

4. **Confidentiality**.

   A. Gifford agrees that he will keep the existence and terms of this Agreement strictly confidential, and that he will not disclose the terms of this Agreement, such document's existence, its negotiation, the facts underlying his claims that led up to this Agreement, or the fact of payment of money or provision of benefits (collectively, "Settlement Issues") to any person or persons. Notwithstanding the foregoing, Gifford may disclose the Settlement Issues to his attorneys, accountants, and tax advisors, and his spouse provided that any such persons to whom Gifford discloses such information shall agree to honor this confidentiality requirement, and provided further that such person's violation of this confidentiality requirement will be treated as a violation of this Agreement by Gifford. This subsection does not prohibit Gifford's disclosure to the extent legally required.

   B. Gifford agrees that neither he nor anyone acting at his direction or under his control shall make any disclosure relating to any Released Party, or any aspects of Gifford's employment at HSBC, the termination thereof, or any claim asserted by him against HSBC, to any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form including books, articles, blogs, internet postings or writings of any kind, film, videotape, audiotape or any other medium. If asked about the Civil Action, Gifford will respond "No comment" and nothing further.

   C. Gifford agrees that he will not disparage, denigrate, defame, impugn or otherwise damage or assail the reputation or integrity of HSBC, their affiliated entities, any of their current or former employees, officers or directors. This Section 4(C) should not be read to prevent any person from testifying in good faith under oath pursuant to a subpoena, or as otherwise required by governing law.

5. **No Admission of Liability**. By entering into this Agreement, no Party admits any liability whatsoever to any other Party or to any other person or entity, and HSBC expressly denies any and all such liability. Gifford further promises and agrees that neither this Agreement, nor its existence, may be the basis for, or used as evidence of, any future claim by Gifford against HSBC and/or any Released Party.

6. **Joint Participation in Preparation of Agreement**. The Parties hereto participated jointly in the negotiation and preparation of this Agreement, and each Party has had the opportunity to obtain the advice of legal counsel and to review, comment upon, and redraft this Agreement. Accordingly, it is agreed that no rule of construction shall apply against any Party or in favor of any Party. This Agreement shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one Party and in favor of the other.

7. **Return of Property**. Gifford represents that he has returned all materials and property belonging to HSBC and any of its affiliated entities, including, but not limited to, all files, keys, vehicles, and any other property belonging to HSBC or its affiliated entities, whether in written, tangible or electronic form (including all copies thereof).

Initials 

8. **Severability**.  Should any of the provisions of this Agreement be rendered invalid by a court or government agency of competent jurisdiction, it is agreed that this shall not in any way or manner affect the enforceability of the other provisions of this Agreement which shall remain in full force and effect.  The Parties further agree that Florida law shall govern the validity and interpretation of this Agreement (without regard to its principles of conflict of laws) and that jurisdiction and/or venue of any action involving the validity, interpretation, or enforcement of this Agreement or any of its terms, provisions, or obligations, or claiming breach thereof, shall exist exclusively in the state and federal courts of Miami, Florida.  The Parties represent that this Agreement may be used as evidence in any subsequent proceeding only to enforce its terms, provisions, or obligations.

9. **Section Headings**.  Section headings in this Agreement are included for convenience of reference only and shall not be a part of this Agreement for any other purpose.

10. **Entire Agreement**.  This Agreement constitutes the complete understanding between Gifford and HSBC and supersedes any and all prior agreements, promises, or inducements, no matter its or their form, concerning its subject matter.  No promises or agreements made subsequent to the execution of this Agreement by these Parties shall be binding unless reduced to writing and signed by these Parties.

11. **Modifications**.  No modifications, amendments, or changes to this Agreement shall be binding or enforceable unless reduced to writing and signed by both Parties.

12. **Counterparts**.  This Agreement may be executed in counterparts, which when taken together shall constitute one and the same instrument.

13. **Ownership of Claims**.  Gifford represents and warrants to HSBC that he has not assigned any claims he may have against HSBC or any of the other Released Party to any other person or entity.  Gifford hereby acknowledges that no child support order, garnishment orders, or other orders requiring him to pay money to any other person are now in effect.

14. **Implementation.**  Gifford and HSBC agree to sign any documents and do anything else that is necessary in the future to implement this Agreement (e.g., completing tax forms and other administrative tasks to effectuate the settlement).

15. **Period for Review**.  Gifford agrees by his signature below that he had, and that HSBC gave him, a reasonable time in which to consider this Agreement before executing it, and that such period was sufficient for him to fully and completely consider all of its terms.  Gifford hereby waives any right he might have to additional time within which to consider this Agreement.  Gifford acknowledges that he was represented by counsel in his review of this Agreement.  Gifford has carefully read this Agreement, fully understands what it means, and is entering into it voluntarily.

The individual executing this Agreement on behalf of HSBC has all requisite capacity, power, and authority to execute and bind HSBC to this Agreement, and to perform all obligations hereunder.

Initials 

DATED: October 31, 2013

_____
GUY D. GIFFORD

DATED: October 31, 2013

HSBC BANK USA, N.A.

_____

By: _____

Title: _____

Initials \_\_\_\_\_

- 5 -

DATED: October 31, 2013          HSBC BANK USA, N.A.

                                 By: _____
                                     Ada Rollo
                                 Title: VP, Sr. Administrative Manager

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:13-CV-22602

GUY D. GIFFORD,
and other similarly-situated individuals,

    Plaintiff(s),

v.

HSBC SECURITIES (USA) INC.,

    Defendant.
_____/

## ORDER APPROVING THE PROPOSED SETTLEMENT AND DISCONTINUING THE INSTANT ACTION

WHEREAS, on July 19, 2013, Plaintiff filed the instant action against Defendant alleging, *inter alia,* that the Defendant violated the Fair Labor Standards Act by failing to pay overtime wages;

WHEREAS, the Court has not certified any purported class or collective action;

WHEREAS, neither the Court nor any party or counsel has issued any notice to the purported class;

WHEREAS, no other individual has joined this action as a plaintiff other than the named Plaintiff;

WHEREAS, the parties and their counsel have not publicized this action and this action has not otherwise received any publicity;

WHEREAS, Defendant expressly denies any and all liability to Plaintiff and dispute the merits of Plaintiff's claims;

WHEREAS, the parties desire to amicably resolve all differences between them;

WHEREAS, the parties, after fair, informed and impartial negotiations, have reached a settlement that contains a release of Plaintiff's claims in this action;

WHEREAS, the Fair Labor Standards Act provides that the release is not binding without judicial or Department of Labor supervision;

WHEREAS, the parties submitted to the Court under seal a copy of the Settlement Agreement and General Release ("Agreement"), which contains the Plaintiff's release of claims;

WHEREAS, among other things, the parties have informed the Court that: (a) the parties were represented by able counsel; (b) Plaintiff entered into the settlement voluntarily; (c) the settlement does not purport to prejudice or affect the rights of any members of the proposed class; (d) this action may be dismissed without notice to any members of the proposed class; and (e) the terms of the settlement are embodied in a detailed Agreement that the parties have executed;

WHEREAS, the Court having read and reviewed the Settlement Agreement and General Release, finds that the Agreement is fair and equitable;

IT IS HEREBY ORDERED that the Court approves the Agreement to resolve the instant action; and

IT IS FURTHER ORDERED that the above-captioned action is hereby dismissed with prejudice to Plaintiff and without prejudice to any purported class and without costs as against any Party.

SO ORDERED.

Dated: Miami, Florida
_____, 2013

_____
URSULA UNGARO, U.S.D.J.

# EXHIBIT B

SO ORDERED.

Dated: Miami, Florida
_____, 2013

_____
URSULA UNGARO, U.S.D.J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:13-CV-22602

GUY D. GIFFORD,
and other similarly-situated individuals,

    Plaintiff(s),

v.

HSBC SECURITIES (USA) INC.,

    Defendant.
_____/

## STIPULATION OF DISCONTINUANCE

IT IS HEREBY STIPULATED AND AGREED by and between the attorneys for the Parties that the above-captioned action is hereby discontinued with prejudice to Plaintiff Guy D. Gifford and without prejudice to any purported class and without costs as against any Party. This stipulation may be filed by any Party without further notice.

By: _____
    Allan S. Bloom, Esq.
    Admitted Pro Hac Vice
    Paul Hastings LLP
    75 East 55th Street
    New York, New York 10022
    (212) 318-6000

Kelly-Ann G. Cartwright, Esq.
Florida Bar No. 892912
Holland & Knight LLP
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
(305) 789-7799

*Attorneys for Defendant*
HSBC Securities (USA) Inc.

By: _____
    Anthony M. Georges-Pierre, Esq.
    Florida Bar No. 0533637
    Remer & Georges-Pierre PLLC
    44 West Flagler Street, Suite 2220
    Miami, Florida 33130
    (305) 416-5000

*Attorneys for Plaintiff*
Guy D. Gifford